UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BILLY DIXON,

                                     Plaintiff,

                  -against-

THE CITY OF NEW YORK, POLICE OFFICER LUIS
ANGELES – SHIELD 14803, POLICE OFFICER "JOHN
DOE"

                                  Defendants.
------------------------------------------------------------------------X

**COMPLAINT
AND JURY DEMAND**

Case No.: 1:16-CV-4060

Plaintiff Billy Dixon, by his attorneys, Talkin, Muccigrosso & Roberts LLP, by Martha Kashickey, Esquire, for his complaint alleges as follows:

### PRELIMINARY STATEMENT

1. The claim arises from an incident on March 4, 2015 in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States and the laws of the State of New York.

2. Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants and such other and further relief as the Court deems just and proper.

### NOTICE OF CLAIM

3. Within 90 days of the events giving rise to this claim, Plaintiff Billy Dixon filed written notice of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.  A 50H hearing was held on November 13, 2015.

### PARTIES

4. Plaintiff Billy Dixon is a resident of Bronx County in New York State.

5. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

6. On information and belief, the individual police officer defendants were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of agents, servants and employees of the City of New York. On information and belief, Defendant police officers were involved in the illegal arrest of Plaintiff and/or failed to intervene in the actions of their fellow officers. Defendant police officers are sued in their individual and official capacities.

7. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

8. On March 4, 2015, at approximately 10:00am in the Bronx, Plaintiff had left his residential drug treatment program with an escort and was on his way to visit his parole officer.

9. He was walking south from the vicinity of East 165th Street and Third Avenue.

10. Plaintiff was not acting in a suspicious manner, or committing any crimes. He was simply walking.

11. When Plaintiff reached East 163rd Street, Defendant Angeles and his partner, dressed in plain clothes and in an unmarked van, drove up next to Plaintiff and jumped out of their van.

12. They threw Plaintiff against a wall and searched him.

13. They recovered a common plastic straw and Plaintiff's prescription diabetes medication.

14. The police officers placed him in their van. When Plaintiff asked why he was being arrested, the police officers threatened to drive to a secluded area and beat him if he did not stop speaking.

15. They took Plaintiff to the 42nd precinct, where Plaintiff was stripped down to his underwear and searched.

16. Plaintiff was held in a cell for many hours. He missed his diabetes medication dose and felt ill, but the police officer defendants told him that if he sought medical attention, he would stay in police custody longer.

17. Plaintiff was eventually arraigned on charges of drug possession because Defendant Angeles falsely swore that the straw that was recovered contained cocaine.

18. Plaintiff was released on his own recognizance.

19. Plaintiff's drug treatment program put him on a restricted schedule while the charges were pending.

20. Plaintiff was aware that the charges could lead to a parole violation and state prison time.

21. At Plaintiff's first court appearance, the prosecutor stated that the straw was tested by a laboratory and contained no trace of any narcotic whatsoever. All charges against Plaintiff were dismissed.

22. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate Plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.

23. During the entire ordeal, through to the dismissal of charges, neither of the defendant police officers, despite having reasonable opportunity to do so, took action to end the violation of Plaintiff's constitutional rights, or to intervene to prevent their fellow officers from violating Plaintiff's rights.

24. During all of the events above described, Defendants acted maliciously and with intent to injure Plaintiff.

DAMAGES

25. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution;

   b. Loss of liberty;

   c. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety.

**FIRST CAUSE OF ACTION**
DEPRIVATION OF CONSTITUTIONAL RIGHTS VIA U.S.C. § 1983
(against individual police officer defendants)

26. The above paragraphs are here incorporated by reference.

27. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to Plaintiff under 42 U.S.C. § 1983.

28. Defendants, under color of state law, subjected the Plaintiff to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving

Plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

    a. Freedom from unreasonable searches and seizures of his person;

    b. Freedom from arrest without probable cause;

    c. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiff was aware and did not consent;

    d. Freedom from deprivation of liberty without due process of law;

29. Police officers have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency false arresting a civilian.

30. Defendants violated Plaintiff's constitutional rights by failing to intervene in other Defendants' clearly unconstitutional arrest which resulted in the injuries and damages set forth above.

31. Plaintiff has been damaged as a result of Defendants' wrongful acts.

## SECOND CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY – "MONELL"
(against defendant City of New York)

32. The above paragraphs are here incorporated by reference.

33. The City is liable for the damages suffered by Plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of Plaintiff's constitutional rights, the City failed to remedy the wrong; it has created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and

it has been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the intolerably frequent illegal arrests by its police officers, but has nevertheless exhibited deliberate indifference to such illegal arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

34. At all times material to this complaint, there was a pattern and practice of conduct by NYPD officers of preying on patients of drug treatment programs by harassing them outside their programs, utilizing unlawful "stop and frisk" tactics as well as undercover "buy and busts" in which officers pretending to be addicts beg methadone patients to sell them their dose and then charge them with being a drug dealer. According to a survey conducted by VOCAL-NY, an advocacy group that focuses on poor people and drug users, "nearly four in ten methadone patients in New York City have been stopped and frisked by police outside their clinics, while seven in ten had seen someone else get stopped and frisked."[1] Numerous other City residents have filed suit against officers engaging in this predatory behavior toward drug program patients, and the City has failed to stop the practice.[2]

35. The aforesaid event underlying Plaintiff's factual allegations was not an isolated incident. The City has been aware for some time, from media reports, lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, especially coming and going from drug treatment facilities, bring charges against citizens with no legal basis, perjure themselves in charging

---

[1] *See* Knefel, John. The Common Cure for Heroin Addiction is Also a Magnet for Police Harassment." Buzzfeed News, Feb. 27, 2015, available online: https://www.buzzfeed.com/johnknefel/how-police-harassment-at-methadone-clinics-makes-quitting-he?utm_term=.asGAkNkXP#.ewdYvOv0Z last visited May 26, 2016.
[2] *See*, e.g., Torres v. City of New York et al. 15 CV 2864 (S.D.N.Y.); Angone v. City of New York et al., 15-cv-01276 (E.D.N.Y.); Soriano v. City of New York et al (Bronx Co. Sup. Ct.).

instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

36. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[3] Former Deputy Commissioner Paul J. Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity goals."[4] NYPD Officer Adil Polanco has asserted that his command, the 41st precinct in the Bronx, regularly requires officers to make at least "one arrest and twenty summonses" per month.[5] The New York City Office of Collective Bargaining concluded that officers in Brooklyn's 75th Precinct were required to issue four parking tickets, three moving violation citations, three "quality-of-life" summonses, make one arrest and two stop-and-frisks each month.[6] Arbitrator Bonnie Siber Weinstock ruled that the NYPD maintained an illegal quota system, and she ordered the city to cease and desist from the practice.[7]

37. Kieran Creighton, commander of the NYPD Housing Police Service Area 8 in the north Bronx, was investigated in 2007 for ordering officers to make a certain number of arrests each month. According to the New York Daily News:

> "The incident allegedly occurred in the spring when Creighton ordered at least eight members of an undercover anti-crime team to a meeting in Pelham Bay Park to berate them about an alleged lack of arrests, sources said.

---

[3] *See* WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited on June 1, 2016.
[4] Jim Hoffer, *NYPD Officer Claims Pressure to Make Arrests,* WABC-TV Eyewitness News, March 2, 2010. Available at http://abc7ny.com/archive/7305356/. ("Police Officers like others who receive compensation are provided productivity goals and they are expected to work.") Last visited June 1, 2016.
[5] *See id.*
[6] *New York City Ticket Quota Confirmed, Denied.* TheNewspaper.com, Jan. 21, 2006, available at http://www.thenewspaper.com/news/09/914.asp. Last visited June 1, 2016.
[7] *See id.*

'You can't make the nine collars a month, then we'll all have to go our separate ways,' Creighton told the officers, according to an internal complaint obtained by The News.

Anything less than nine arrests would be a 'personal slap in the face,' Creighton allegedly said.

Creighton then told the cops to 'finagle' the times of arrests so any overtime was paid for by a federal funded anti-drug program, the complaint alleges.

Unbeknownst to Creighton, one officer had his NYPD radio switched on – so that captain's 10- to 12-minute speech was broadcast to Bronx precincts in Morrisania and Shuylerville and taped by a 911 dispatcher."[8]

38. Not only does the quota/productivity system create a climate that encourages officers on the beat to arrest innocent people, but when charges are dismissed or otherwise judicial review determines that the arrest was invalid, there are simply no consequences to the officer. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2012, New York City paid out over $131 million for the fiscal year, compared to 2011, when it paid out more than $166 million, and 2010, when it paid $128 million.[9] In the first ten years of the 21st century, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[10] More than 40% of those settlements in 2011 stem from excessive force and false arrest. In this case, Defendant Angeles has been sued at least once for false arrest, costing the City $20,000 in settlement.[11]

---

[8] Alison Gendar, *NYPD Captain Allegedly Caught in Arrest Quota Fixing*. The New York Daily News, Nov. 14, 20017. Available at http://www.nydailynews.com/news/crime/nypd-captain-allegedly-caught-arrest-quota-fixing-article-1.256006. Last visited June 1, 2016.

[9] Mayor Michael Bloomberg's preliminary Management Report for FY 2013, available at http://www.nyc.gov/html/ops/downloads/pdf/pmmr2013/2013_pmmr.pdf, see page 6, last visited on June 1, 2016.

[10] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953, October 15, 2010 last visited on June 25, 2013.

[11] *See* Antoine Stone v. Luis Angeles et al, 07 CV 9826 (S.D.N.Y. filed Nov. 6, 2007).

39. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. <u>Wyatt v. Cole,</u> 504 U.S. 158, 161, (1992) <u>citing</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." <u>See</u> <u>Hudson v. Michigan</u>  547 U.S. 586, 598 (2006) citing <u>Correctional Services Corp. v. Malesko,</u> 534 U.S. 61, 70 (2001) and <u>Nix v. Williams</u>, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." <u>Carlson v. Green</u>, 446 U.S. 14, 21, (1980), <u>citing</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 442, and footnote 6 (1976).

40. However, the City of New York has insulated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability. The City Council, despite being alerted at a City Council Government Operations committee hearing on December 12, 2009, and on other occasions, to the

obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

41.  The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, has no enforcement mechanisms once making a finding of misconduct against an officer; it can only make recommendations to the NYPD.  The NYPD, once it receives a substantiated complaint from the CCRB, fails to adequately discipline officers for misconduct.  In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[12] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions.  This entire procedure provides so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

42.  Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible

---

[12] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006", available at: http://www.nyclu.org/files/ccrb_failing_report_090507.pdf, last visited on June 1, 2016.

testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

43. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department--there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

44. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiffs' civil rights, without fear of reprisal.

45. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

**THIRD CAUSE OF ACTION**
ABUSE OF PROCESS
(against all defendants)

46. The above paragraphs are here incorporated by reference.

47. By the conduct and actions described above, Defendants Angeles and Doe caused regularly issued process to be issued against Plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activing the process was intent to harm Plaintiff without economic or social excuse or justification, and Defendant Angeles and Doe were seeking a collateral advantage or corresponding detriment to Plaintiff, including but not limited to cover for their misdeeds by causing Plaintiff to be charged with crimes, a goal which was outside the legitimate ends of the process.

48. As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

### FOURTH CAUSE OF ACTION
FALSE ARREST AND FALSE IMPRISONMENT
(against all defendants)

49. The above paragraphs are here incorporated by reference.

50. Defendants arrested Plaintiff without a warrant or probable cause.

51. Plaintiff was conscious of the arrest and confinement.

52. Plaintiff did not consent to the arrest and confinement.

53. Plaintiff's arrest and confinement were not otherwise privileged.

54. As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

### FIFTH CAUSE OF ACTION
MALICIOUS PROSECUTION
(against all defendants)

55. The above paragraphs are here incorporated by reference.

56. Defendants caused a criminal proceeding to be initiated against Plaintiff

57. The criminal proceeding terminated in Plaintiff's favor.

58. Defendants lacked probable cause to initiate the criminal proceeding.

59. Defendants acted willfully, recklessly and with malice toward Plaintiff.

60. As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

### SIXTH CAUSE OF ACTION
NEGLIGENCE
(against all defendants)

61. The above paragraphs are here incorporated by reference.

62. The City owed Plaintiff a duty of care to maintain a police department that acts in accordance with law and for which it is ultimately responsible.

63. Defendant police officers owed Plaintiff a duty of care to exercise due diligence ascertaining probable cause before arresting him.

64. The defendants, jointly and severally, breached their duty of care and negligently caused damage to Plaintiff.

65. As a result of Defendants' tortious conduct, and with regard to defendant police officers, in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A. In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B.      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C.      Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.      Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:    June 1, 2016
                 New York, New York

Respectfully yours,

/s/
_____
By: Martha Kashickey, Esq.
Talkin, Muccigrosso & Roberts LLP
Attorneys for Plaintiff
40 Exchange Place, Ste. 1800
New York, NY
(212) 482-0005
marthag@talkinlaw.com

TO:    CITY OF NEW YORK
         Corporation Counsel Office
         100 Church Street
         New York, NY  10007

         P.O. LUIS ANGELES
         Narcotics Borough Bronx
         1 Police Plaza, Room: 1100
         New York, NY 10007